SMITH, J.,
delivered the opinion of the court. — The petitioner assigns two errors, as cause to entitle him to a reversal of the judgment of the circuit court: 1st. that the case was continued by the circuit court in his absence and without his consent; 2. that he was denied the right of peremptory challenge to the jurors sworn to enquire whether he was the same identical person mentioned in the several records of conviction.
As to the first point it may be remarked, that it is only where a party is ruled into trial improperly, that an error of the court in deciding on a motion for a continuance can be corrected by a superior court. If the error be in continuing the case improperly, the only effect of it is the delay of the case: it is not a discontinuance; nor could it be a good reason for setting aside a judgment at a subsequent term, when a full and fair trial had,been given to the prisoner. This objection, therefore, affords no ground for reversal of the judgment.
As to the second point, it will be found that at common law a peremptory challenge is not allowed in any 850 *case except upon the plea of not ' guilty, and no peremptory challenges are ever allowed on the trial of collateral issues. So we find it stated by the elementary writers: see 1 Chitty’s C. L. 535; 3 Bac. Abr. Juries, E. 9, p. 762. The case of The king v. Radcliffe, 1 W. Black. 6, may also be referred to as precisely similar to this case. The prisoner had been convicted of high treason; and upon a collateral issue, that he was not the same person, a peremptory challenge was insisted upon, which was refused by Eee, C. J. Other cases might be referred to; but it is deemed unnecessary. It seems very clear that there was no error in the decision of the circuit court upon this point.
The writ of error is therefore refused.
PENITENTIARY.
Guaranties in Bill of Rights Not Applicable to Convicts. — The guaranties included in the hill of rights have reference to freemen, and are not applicable to persons convicted of crime and confined in the state penitentiary. A convicted felon has only such rights as the statutes may give him. Ruffin v. Com., 21 Graft. 790. See monographic note on “Constitutional Law" appended to Com. v. Adcock, 8 Gratt. 661.
Offences Committed by Convicts — Where Triable. — A person convicted of felony and sentenced to confinement in the penitentiary, is, until the time of his imprisonment has expired or he has been pardoned, in contemplation of law, in the penitentiary, though he may have been hired out to work on a railroad, or the like, in a distant county; and the law relating to convicts in the penitentiary still applies to him. Thus in a case in which a convict was hired to work on a railroad in Bath county, and in attempting to escape he killed the man placed by the contractor *841 to guard him, it was held that he might he tried, before the circuit court ot the city of Richmond, and by a jury summoned from that city. Ruffin v. Com., 21 Gratt. 790.
Proceedings against Escaped Convicts. — The proceeding's against an escaped convict must he by indictment. Com. v. Ryan, 2 Va. Cas. 467 (1824).
Punishment for Escaped Convicts. — The punishment for convicts escaping from the penitentiary is prescribed by §54 of the penitentiary act. The punishment consists in such additional confinement and hard labor, and such additional corporal punishment, not extending to life and limb, as the court before whom such person shall be convicted of such escape shall, in the exercise of a sound discretion, adjudge and direct. Com. v. Ryan, 2 Va. Cas. 467.
Proceedings to Sentence Convicts for Increased Punishment for Second Offence. — Sections 4179, 4182, Va. Code 1887, provide that if a person sentenced to the penitentiary and received therein shall have been before sentenced to like punishment, and the record of his conviction does not show that he was sentenced under §§ 8905, 8906, requiring sentence for an increased term in such case, the superintendent of the penitentiary shall tile an information in the circuit court of Richmond to require the convict to say whether he is the person formerly convicted and sentenced; and if he remain silent, or deny such identity, a jury of bystanders shall be summoned to try the issue thus raised, and upon a verdict against him the prisoner shall be sentenced to such further confinement as is prescribed by chapter 190. Such provisions are constitutional, as the prisoner is not in the position of one charged with crime in the first instance, with all the presumptions of law in favor of his innocence, and a writ of habeas corpus asking for his discharge from such additional punishment will be denied. King v. Lynn, 90 Va. 345, 18 S. E. Rep. 439.
Upon an inquiry, in pursuance of the statute (1 Rev. Code, ch. 171, § 16), whether a convict received in the penitentiary be the same person mentioned in the record of the former conviction, the prisoner has no right to challenge peremptorily any person called as a juror. Brooks v. Com., 2 Rob. 845.
Same — Continuance in Absence of Convict Does Not Invalidate Judgment. — Where a report was made to the circuit court of Henrico by the superintendent of a penitentiary, pursuant to the statute (1 Rev. Code, ch. 171, § 16), that a convict received into the penitentiary was the same person mentioned in the record of a former conviction, and that he had not been sentenced to the punishment prescribed by law for the second offence, and the court continued the case at several successive terms, in the absence and without the consent of the convict, after which he was brought into court and sentenced to proper punishment for his second offence, it was held, that such continuance of the case furnished no grounds of objections to the judgment. Brooks v. Com., 2 Rob. 845.
Same — Sentence to Solitary Cells. — A convict in the penitentiary, against whom an information is filed in superior court of law for Henrico, under § 16 of the penitentiary act. charged with haying been received a second time into that prison for a second offence, may. on being identified either by verdict or by confession, be sentenced by the court to a portion of confinement in the solitary cells. Com. v. Bryant, 2 Va. Gas. 465 (1824).
Convict Working on Road — Liability of County for His Torts. — An action cannot be maintained against a county for personal injuries, caused by the negligence of a convict of the state penitentiary, while working on a public road under the direction of the county, because the county, being a part of the sovereign power, cannot be sued in the absence of a statute giving right to sue in such case. Fry v. County of Albemarle, 86 Va. 195, 9 S. E. Rep. 1004.
Liability of Present Government for Purchases by Penitentiary Agent of Richmond Government. — Where the store-keeper of the penitentiary, elected prior to 1861, purchased leather to be manufactured by the convicts in the penitentiary — the store-keeper and the seller both recognizing the authority of the Richmond government — it was held that the seller, not having been able to obtain payment from the Richmond authorities, could not recover from the present government of Virginia in a suit instituted in 1866. Com. v. Chalkley, 20 Gratt. 404. See also, De Rothschilds v. Auditor, 22 Gratt. 41.
Liability of Sureties of Agent for Debts Contracted with His Predecessors. — By § 57, ch. 206, Code 1873, it is provided that the genera] agent of the penitentiary and his sureties shall be responsible for the amount of all debts for goods or work contracted with him on his authority, and for all money received by him as such agent, except as therein provided. There is no law making it a part of his duty to collect debts contracted with his predecessors, and moneys so collected are not covered by his bond, and are not chargeable to his sureties. Loving v. Auditor, 76 Va. 942.
Funds Received by Agent in Excess of Appropriations —Sureties Not Liable--Tbe constitution of Virginia (art. 10, § 10) declares that no money shall be paid out of the treasury except in pursuance of appropriations bylaw. Where thegeneral agent of the penitentiary receives $12,500 pursuant to appropriations made before or after receipts, and $5,000 in excess of appropriations, the sureties are liable for the first, but not for the last, sum. Loving v. Auditor, 76 Va. 942.
Purchases by Penitentiary Agent — Liability of Sureties.-Where the general agent of the penitentiary buys raw material for the state and gives therefor his note signed by himself with the letters “G. A.” (meaning general agent) appended, but the state assumes the liability and pays the notes, the general agent and sureties are entitled to no credit therefor, as for material purchased on his individual responsibilities. Loving v. Auditor, 76 Va. 942.
Statutory Provisions in Regard to Signing Drafts Drawn by Penitentiary Agent. — If, by the provisions of the Code 1873, ch. 206, § 58, the legislature intended all drafts drawn by the general agent of the penitentiary to be certified by the superintendent and countersigned by the governor, a failure to certify and countersign the drafts does not affect the liabilities of the sureties for money so drawn and received by him. These provisions are merely directory to such officers, and form no part of the contract with the sureties. Loving v. Auditor, 76 Va. 942.
Reduction of Compensation of Penitentiary Agent-Statute. — The legislature having reduced the salary of the general agent of the penitentiary, he and his sureties are entitled to credit for the reduced compensation, and not for the compensation at the rates allowed by law in force at the dates of the official bonds. But as by act, which became law July 1,1878, the legislature restored the compensa *842 tion as allowed by Code 1873, ch. 13, § 23, credit must be allowed after that date at the original rates. Loving v. Auditor, 76 Va. 942.
flisappropriation of Private Funds by Penitentiary Agent. — Where the agent of a penitentiary receives funds from private parties for the purpose of building a chapel for convicts, his sureties are not chargeable for a misapplication of these funds. Loving v. Auditor, 76 Va. 942.
IDENTITY.
I. Identity of Names.
1. Presumption from Identity of Names.
2. Difference in Mode of Spelling Names.
II. Identity of Accused in Criminal Cases.
1. Must Be Established.
2. Examining Person or Garments of Accused.
3. Opinion Evidence.
4. Hearsay Evidence.
5. Burden of Proof.
III. Identity of Persons Making Admissions.
I. IDENTITY OF NAMES.
1. PRESUMPTION PROM IDENTITY OP NAMES. —Prom the fact that the names of two persons are the same, the presumption of the identity of the persons will arise. Thus in a case in which the names of the plaintiff and of the defendant appeared from the record to be identical, the court held that this was sufficient to raise the presumption that the same person was both plaintiff and defendant in the case. Sweetland v. Porter, 43 W. Va. 189, 27 S. E. Rep. 362. In another case in which the name of the trustee in a deed of trust and that of the notary public, who took the acknowledgment, were the same, it was held that the presumption that they were the same person would have in some way to be rebutted or denied in order for the acknowledgment to be valid. Tavenner v. Barrett, 21 W. Va. 666.
2. DIFFERENCE IN MODE OP SPELLING NAMES. — In identity cases the courts attach but little importance to the concurrence or difference in the mode of spelling a name. Thus in a case in which the heirs of a Scotchman, who died in Virginia, were seeking to establish their identity, and their claim to the estate, the court said: “Much reliance has been placed upon the different spelling of the name. We should attach but little importance to the dropping of a single letter in the spelling of the name were the spelling uniform in one way in Virginia, and uniform the other way in Scotland. Such changes are too common to be of much weight in questions like that before us. But the spelling of the name in this case is not uniform in either country. * * * The diversity in the spelling of the name existed in both countries, and no importance should be attached to it.” Adie v. Com., 25 Gratt. 712.
II. IDENTITY OF ACCUSED IN CRIMINAL CASES.
1. MUST BE ESTABLISHED. — The question of identity is presented in every criminal prosecution. That is, it devolves upon the commonwealth to show that the accused is the person who committed the crime. This it may do in several ways, the simplest of which is by the testimony of persons who saw the crime committed. It is most frequently done, however, by the'means of circumstantial evidence. Por example, where it is shown that a crime has been committed by the use of certain tools and instruments, it is always pertinent to show, as one element connecting the accused with the crime charged, that he possessed such tools and instruments. Nicholas v. Com., 91 Va. 741, 21 S. E. Rep. 364; McBride v. Com., 95 Va. 818, 30 S. E. Rep. 454.
But the mere failure of the evidence to disclose any other criminal agent than the person accused is not a circumstance which may be considered by the jury in determining whether he is or is not the person who committed the crime; for the prisoner is presumed to be innocent until his guilt is established and he is not to be prejudiced by the inability of the commonwealth to point out any other criminal agent. McBride v. Com., 95 Va. 818, 30 S. E. Rep. 454. See also. Smith v. Com., 21 Gratt. 809; monographic note on “Homicide” appended to Souther v. Com., 7 Gratt. 673.
2. EXAMINING PERSON OR GARMENTS OP ACCUSED. — While the defendant in a criminal case cannot be compelled to connect himself with the crime by act or words, by the better doctrine he, or his garments, may be examined for evidence of the crime. Thus in State v. Baker, 33 W. Va. 319, 10 S. E. Rep. 639, it was held proper for the jury to take into consideration the fact that the trousers of the accused, which had been delivered to the sheriff by the prisoner without objection, contained blood stains. See monographic note on “Constitutional Law” appended to Adcock v. Com., 8 Gratt. 661.
3. OPINION EVIDENCE — A witness who testifies that he knows the person in question may be asked his belief as to the identity of such person. It is not a case of expert testimony, but depends upon the observation and knowledge of the particular witness in the given case, to go to the jury for what it is worth, no matter what his science, skill or experience may be in identifying persons. Indeed it is the constant practice to receive in evidence the belief of any witness as to the identity of a person, provided he has any knowledge of such person. State v. Harr, 38 W. Va. 58. 17 S. E. Rep. 794; Hopper v. Com., 6 Gratt. 684, and foot-note.
4. HEARSAY EVIDENCE — It is generally held that hearsay evidence is inadmissible in order to establish the identity of a person ; and in criminal cases it is well settled that hearsay evidence is inadmissible to show that the. accused is the person who committed the crime. Hence statements of the deceased made on the day before the homicide, to a third person in the absence of the prisoner, as to where deceased was then going, are irrelevant and should not be received. McBride v. Com., 95 Va. 818, 30 S. E. Rep. 454.
The court, in applying this rule in a criminal case, held that a witness who identified a certain piece of wearing apparel would not be allowed to repeat what he had heard, as confirming his statement. Hopper v. Com., 6 Gratt. 684.
5. BURDEN OP PROOF. — The burden of proving the identity of the accused rests upon the commonwealth, and the court should instruct the jury, if the accused so requests, that the identity of the accused with the perpetrator of the offense should be proved beyond a reasonable doubt. To refuse such instruction and to give in lieu thereof one which is calculated to create the impression upon the minds of the j ury that the identity of the accused with the perpetrator of the crime may be established by a lesser degree of proof is reversible error. Waller v. Com., 84 Va. 492, 5 S. E. Rep. 364.
Ill. IDENTITY OF PERSONS MAKING ADMISSIONS.
In George v. Pilcher, 28 Gratt. 299, the deposition *843 of a witness, since deceased, was offered, whereby it was sought to show that one of the defendants, in the presence of the other, had, in an interview at Richmond, made to the witness certain admissions material to the issue. These defendants were strangers to the witness, and upon cross-examination describing them he said: “They were not black negroes. I think the brother-in-law had the lightest skin of the two. I think they were not bright mulattoes, but dark mulattoes.” It was proved by other witnesses that the brother-in-law spoken of was a white man, and that the other was so bright that he could hardly be distinguished from a white man. It was further proved that about the time when the witness said he had the interview with the two men they were both in the city inquiring for him. Upon an objection to the reading of the deposition on the ground that the witness did not sufficiently identify the persons whose admissions were sought to be proved by him, it was held that the evidence was prima facie sufficient to authorize the deposition to go to the jury.